IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

TOMMY COCKRELL,                        )
                                       )        CASE NO. 1:14CV2406
                    Plaintiff,         )
          v.                           )
                                       )
                                       )
                                       )        MAGISTRATE JUDGE
COMMISSIONER OF SOCIAL                 )        KENNETH S. McHARGH
SECURITY ADMINISTRATION,               )
                                       )        MEMORANDUM OPINION & ORDER
                    Defendant.         )

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. No.

18).  The issue before the undersigned is whether the final decision of the Commissioner of

Social Security ("Commissioner") denying Plaintiff Tommy Cockrell's ("Plaintiff" or

"Cockrell") applications for Supplemental Security Income benefits under Title XVI of the

Social Security Act, 42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability

Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is

supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance benefits and Supplemental Security

Income benefits on November 13, 2009, alleging disability due to learning disability, arthritis,

and ADHD, with an onset date of January 1, 2006.  (Tr. 66). The Social Security Administration

denied Plaintiff's applications on initial review and upon reconsideration.  (*Id.*).  After a hearing

before an Administrative Law Judge ("ALJ") on June 23, 2011, ALJ Terry determined Plaintiff

was not disabled, and Plaintiff did not appeal that decision to the District Court.  (Tr. 66-78).

Plaintiff again submitted applications for Disability Insurance benefits and Supplemental

Security Income on April 25, 2012, alleging disability beginning on December 31, 2009.[1]  (Tr.

98, 129, 223).  His applications were denied initially and on reconsideration, and Plaintiff

requested a hearing before an ALJ.  (Tr. 113-14, 143-44).

On May 21, 2013, an administrative hearing was held before ALJ Susan G. Giuffre.  (Tr.

33-62).  Plaintiff, represented by counsel, appeared and testified at the hearing.  (*Id.*).  A

vocational expert ("VE"), Adolf Swick, also appeared and testified.  (*Id.*).  On July 22, 2013, the

ALJ issued a decision finding Plaintiff was not disabled.  (Tr.  11-27). Applying the doctrine of

*res judicata*, the ALJ modified the alleged onset date to June 24, 2011.  (Tr. 13).  After applying

the five-step sequential analysis,[2] the ALJ determined Plaintiff retained the ability to perform

---

[1] Documents are conflicting as to the alleged onset date.  His Application Summary for Supplemental
Security Income gives an onset date of January 1, 2006, while his Application Summary for Disability
Insurance Benefits gives an onset date of December 31, 2009.  (Tr. 223, 227).  Further, his DIB  and DI
claims explanations, both at the initial and reconsideration levels, provide an onset date of December 31,
2009, while the ALJ decision indicated that his current applications show an alleged onset date of January
1, 2006, but presents a modified onset date of June 24, 2011.  (Tr. 12-13, 83, 98, 115, 129).  At the
hearing, Plaintiff affirmed he was alleging disability since January of 2006.  (Tr. 39).

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis
in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit
has summarized the five steps as follows:

(1)  If a claimant is doing substantial gainful activity–i.e., working for profit–she is not
disabled.

(2)  If a claimant is not doing substantial gainful activity, her impairment must be severe
before she can be found to be disabled.

(3)  If a claimant is not doing substantial gainful activity and is suffering from a severe
impairment that has lasted or is expected to last for a continuous period of at least twelve
months, and her impairment meets or equals a listed impairment, claimant is presumed
disabled without further inquiry.

work existing in significant numbers in the national economy.  (*Id*.).  Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council.  (Tr. 6-7).  The Appeals Council denied his request for review, making the ALJ's July 22, 2013, determination the final decision of the Commissioner. (Tr. 1-5).  Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. EVIDENCE

### A.  Personal Background Information

Plaintiff was born on February 21, 1962, and was forty-seven years old on the alleged onset date.  (Tr. 83, 223).  Plaintiff completed high school in special education classes, and has past work experience as a self-employed yard worker, janitor, food runner, truck loader/un-loader, and a restaurant busboy, dishwasher, cleaner, and car parking attendant.  (Tr. 72).  At the hearing, Plaintiff testified that he was a bad reader and could add and subtract a little bit.  (Tr. 56).  Plaintiff lives with his father, and is left-hand dominant.  (Tr. 38, 48).

### B.  Medical Evidence[3]

On September 20, 2011, Plaintiff presented at Care Alliance for ear wax removal.  (Tr. 381).  Records show a primary diagnosis of myalgia and myositis, unspecified, impotence of

---

(4)    If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)    Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

[3] The following recital is an overview of the medical evidence pertinent to Plaintiff's appeal.  It is not intended to reflect all of the medical evidence of record.  Plaintiff's challenge to the ALJ's findings relates only to his physical impairments.  Accordingly, this summary focuses on medical evidence relating to Plaintiff's physical condition during the relevant period, although the record includes evidence pertaining to Plaintiff's physical and mental impairments.

organic origin, and unspecified tinnitus.  (*Id.*).   Daniel Meges, M.D., noted Plaintiff complained of ear problems, including ringing and blockage with no decreased hearing, shoulder pain, and ED.  (*Id.*).  The shoulder pain was described as bilateral but mostly on the left side, with pain starting from the neck and radiating to medial side of his arm up to his wrist.  (*Id.*).  Notes further indicated Plaintiff rode his bicycle the entire day, and at night would experience throbbing and shooting pain.  (*Id.*).  The record described Plaintiff as a 49-year-old with no past medical issues, and the myalgia and myositis was determined as likely due to myositis at the Rhomboid muscle, levator scapula with referred pain to his arm.  (Tr. 383).  Plaintiff was prescribed 200 mg Ibuprofen , four times a day as needed for fever, and referred to physical therapy. (*Id.*).

Plaintiff again saw Dr. Meges at Care Alliance on October 12, 2011, with complaints of upper back aches with bike riding.  (Tr. 378).  Plaintiff had primary diagnoses of dermatophytosis of the foot, a sprain of the thoracic region, and an impacted cerumen.  (*Id.*).  Inspection and palpation of Plaintiff's back had normal findings, with paraspinal tenderness over his bilateral trapezius ridges and right levator scapulate M.  (379).  Plaintiff was again referred to physical therapy.  (Tr. 380).

On June 1, 2012, Plaintiff returned to Care Alliance for a follow-up for athlete's foot, where Dr. Meges indicated Plaintiff had not taken the medication he had previously prescribed for that condition.  (Tr. 372).  Plaintiff again complained of aches and pains in his shoulder, daily for two to three years, and stated he rides his bike a lot, with pain when riding, and increased pain at night.  (*Id.*).  On examination, his left shoulder showed range of motion at abduction 90 degrees, external rotation 89 degrees, and internal rotation 80 degrees.  (*Id.*).  Plaintiff exhibited normal rotator cuff strength, with no tenderness in the A-C joint, but tenderness at the biceps tendon and rotator cuff tendon.  (*Id.*).  Dr. Meges assessed Plaintiff as having disorders of bursae

4

and tendons in the left shoulder region, unspecified.  (*Id.*).  He noted Plaintiff declined a ken shot, and just wanted pain medication.  (*Id.*).  Plaintiff was directed to take Naprosyn and Tylenol.  (*Id.*).

Plaintiff presented at the Cleveland Clinic emergency room on June 16, 2012 for chest pain with left arm numbness and shortness of breath.  (Tr. 408).  Plaintiff stated he had been working in his yard, drank one beer, and then was riding his bike when the symptoms started.  (*Id.*).  Notes indicated the chest pain had subsided but Plaintiff continued to have left arm pain and numbness, felt jittery, and requested to walk to a store to buy a forty ounce beer to feel better.  (*Id.*).  Notes further showed Plaintiff had his bicycle at his bedside, refused any IV or "needles," and was discharged with a diagnosis of alcohol abuse.  (Tr. 408-10, 414).  Plaintiff returned to the emergency room on June 18, 2012, again complaining that he had been having chest pain radiating to his left shoulder when riding his bike or doing landscaping.  (Tr. 431).  He admitted he drank heavily and daily (including that day), and stated he was not on any medication.  (Tr. 431-32).  Examination notes showed Plaintiff had full range of motion in all four extremities, and Plaintiff was deemed stable and discharged on June 20, 2012, with a diagnosis of atypical chest pain.  (Tr. 428, 432).

On January 15, 2013, Plaintiff presented for a new patient examination with primary care physician Joseph K. Daprano, M.D., complaining of left shoulder pain for one year, sometimes felt in the neck and right shoulder.  (Tr. 474).  Plaintiff described the pain as an eight out of ten intensity scale, with pain present most days and wakes Plaintiff from sleep.  (*Id.*).  Dr. Daprano noted there was no history of shoulder injury, that an X-ray had been performed, and that Plaintiff took naproxen to try to improve the pain.  (*Id.*).  Examination of Plaintiff's shoulders showed no deformity, asymmetry, or muscle atrophy, with pain in some range of motion

movements, but no pain in others.  (*Id.*).  Plaintiff exhibited normal sensation, reflexes, and gait. (Tr. 474-75).  Dr. Daprano diagnosed Plaintiff with neck and should pain, ordered X-rays, and prescribed Voltaren.  (Tr. 475).

X-rays from March 25, 2013, showed prominent degenerative disc disease with loss of disc space at the C5-C6 level, mild arthritic changes in Plaintiff's right shoulder, and osteoarthritic spurring in the subcromial joint space and greater tuberosity of the left shoulder. (Tr. 479).  Notes indicated other joints and joint spaces appeared well maintained.  (*Id.*).

Plaintiff attended a follow-up appointment with Dr. Daprano on March 29, 2013.  (Tr. 486).  At that time Plaintiff reported his neck pain as no better or worse (but still worse when sleeping), and again complained of shoulder pain.  (*Id.*).  Plaintiff denied any weakness, and Dr. Daprano reordered Voltaren, noting the prescription was never filled, and directed Plaintiff not to take any over the counter medications along with Voltaren.  (*Id.*).  Dr. Daprano reviewed the cervical X-rays with Plaintiff and ordered an MRI, as well as a physical medicine rehabilitation (PMR) consultation.  (*Id.*).  At that time Plaintiff was diagnosed with cervical disc disease and degenerative disc disease.  (Tr. 487).

On April 8, 2013, Dr. Daprano completed a Physician Questionnaire.  (Tr. 469-70).  Dr. Daprano indicated his specialty as internal medicine, and stated Plaintiff's diagnosis as cervical degenerative disc disease, with symptoms of shoulder and neck pain.  (Tr. 469).  No dates or results of clinical, laboratory, or diagnostic testing were included in the questionnaire.  (Tr. 469-70).  Dr. Daprano opined that Plaintiff was capable of standing, sitting, and walking eight hours in an eight hour work day, but could only lift up to ten pounds occasionally.  (*Id.*).  He declined to provide an opinion as to whether Plaintiff would need to take unscheduled breaks or miss days from work, explaining that Plaintiff had no neurological defects, and that he would need input

6

from the PMR consultation to assess these limitations. (Tr. 470). Dr. Daprano did not indicate any other limitations Plaintiff would have in a sustained competitive work environment. (*Id.*).

Plaintiff underwent a cervical spine MRI on April 23, 2013. (Tr. 490). The MRI revealed cervical spondylosis at the C5-C6 level, with stenosis of the right neural foramen, but no spinal cord compression. (*Id.*). Normal alignment and mild degenerative changes in the mid cervical region were shown, as well as minimal degenerative changes at adjacent levels. (*Id.*).

Plaintiff returned to Dr. Daprano on June 4, 2013, again complaining of neck pain, but reporting no weakness. (Tr. 503). Noting Plaintiff had not come in to pick up a prescription for Lyrica he had previously written, Dr. Daprano provided him with the prescription at that time. (*Id.*). Notes further indicated Plaintiff had been taking pills from "the guy down the street" for neck and arm pain. (*Id.*). Examination showed "normal" findings with full strength in his upper extremities to fingertips. (*Id.*). Dr. Daprano reviewed the cervical MRI with Plaintiff, diagnosed cervical spondylosis, and discussed the next steps of the PMR consultation. (*Id.*).

C.  Plaintiff's Testimony

At the hearing, Plaintiff testified that he cannot work because he is in pain most of the time, and that he had issues with his back and is bothered by his shoulders and his right arm. (Tr. 37-38, 50). Plaintiff also stated he suffered from neck pain, and that sometimes he needed to use his left hand to lift up his right hand, although some days (such as at the hearing) he could lift both arms. (Tr. 50-51). He stated five days out of the week his arm was not working right. (Tr. 51). Additionally, he testified he would not try to pick up more than fifteen to twenty pounds because he might drop it, and that he took out the garbage (around fifteen pounds) the previous week, but that he experiences pain when lifting that much weight. (Tr. 52). He indicated pain pills prescribed by the doctor were not strong enough, and he can't sleep at night,

but that he experienced relief when he took stronger pain medication given to him by a lady down the street.  (Tr. 38, 50).

Plaintiff affirmed he was alleging disability since 2006, stating he quit his job as a dishwasher in 2006 because the work was too heavy, and his method was too slow.  (Tr. 40-41).  He admitted he had a couple of short-term jobs after leaving the dishwashing job, including self-employment mowing lawns in 2009. (Tr. 41).  Plaintiff testified he still could sometimes mow lawns part-time, if someone started the mower for him, but that he starts aching if he has to push the mower up and down hills.  (*Id.*).  He further stated he worked as an office cleaner and completed an eight-week floor buffing training program, but that he was unable to use the floor buffers because it required use of both arms.  (42-43).  Plaintiff testified that, prior to 2006, he worked as a food runner, some temporary work of a type he could not remember, dishwasher, bus boy, car parking attendant, and loaded trucks for FedEx.  (Tr. 43-46, 47-48).

According to Plaintiff he lives with his father, and helps with the housework, specifically running the vacuum cleaner and taking out the garbage, but is not able to do much more than that because he cannot lift his arm very well. (Tr. 48-49).  Plaintiff stated his father does the grocery shopping and cooking, but admitted he probably could perform those tasks if he had to.  (Tr. 49).  Further, Plaintiff stated he walks half a mile once or twice a week because swinging his arms while walking helps eliminate the pain, but that he had not been able to ride his bike for the last year due to the pain.  (Tr. 49, 53).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2.  The claimant has not engaged in substantial gainful activity since June 24, 2011, the alleged onset date.

3. The claimant has the following severe combination of impairments: degenerative disc disease of the cervical spine, borderline intellectual functioning, a learning disorder, a mood disorder, post-traumatic stress disorder, and alcohol dependence disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he can perform only simple, routine tasks that do not require reading or adherence to a production quota.

6. The claimant is capable of performing past relevant work as a parking valet. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 29, 2010, through the date of this decision.

(Tr. 15-27).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler,*

745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

### A.  The ALJ's Assignment of Weight to Medical Opinion Evidence is Supported by Substantial Evidence

Treating Source Analysis

When assessing the medical evidence contained within a claimant's file, it is well-established that an ALJ must give special attention to the findings of the claimant's treating source. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). A physician may be deemed a "treating source" if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (alteration in

original) (*quoting* 20 C.F.R. § 404.1502).  While a physician seen infrequently may be a treating source, such a finding is only appropriate "if the nature and frequency of the treatment or evaluation is typical for [the] condition." *Id.*  "The question is whether [the claimant] had the ongoing relationship with [the physician] to qualify as a treating physician at the time he rendered his opinion." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006).

The treating source doctrine recognizes that physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 404.1527(c)(2).  Under the Social Security Regulations, opinions from treating source physicians are entitled to controlling weight if the opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).  The treating source's opinions are not entitled to such deference, however, if they are unsupported by the medical data in the record, or are inconsistent with the other substantial evidence in the record.  *See Miller v. Sec'y of Health & Human Servs.*, No. 91-1325, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (Table).

When the treating physician's opinions are not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion, "including: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x 181, 193 (6th Cir. 2009) (*quoting Wilson*, 378 F.3d at 544); *see* 20 C.F.R. § 404.1527(c)(2)-(5).  "Additionally, the ALJ 'must provide good reasons for discounting treating physicians' opinions, reasons that are sufficiently specific to make clear to any subsequent

11

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.*; *see* 20 C.F.R. § 404.1527(d).  Regardless of how much weight is assigned to the treating physician's opinions, the ALJ retains the power to make the ultimate decision of whether the claimant is disabled.  *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992) (*citing King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).

First, the undersigned finds that Dr. Daprano did not qualify as a treating source entitled to analysis under the treating source rule.  "The question is whether [a doctor] had an ongoing relationship with Plaintiff to qualify as a treating physician at the time he rendered his opinion." *Beauchamp v. Comm'r of Soc. Sec.*, No. 1:12-cv-2839, 2014 WL 1154117, at *10 (N.D. Ohio Mar. 21, 2014) (slip copy) (*citing Kornecky*, 167 F. App'x at 506-07).  In *Beauchamp*, the Northern District found an examining physician did not amount to a treating source where "he rendered a functional capacity opinion after seeing Plaintiff only twice; and a second capacity evaluation after seeing Plaintiff only three times." *Id.* at 11; *see Yamin v. Comm'r of Soc. Sec.*, 67 Fed. App'x 883, 884 (6th Cir. 2003) (finding examining doctor was not a treating source, reasoning "two examinations did not give [the doctor] a long term overview of [claimant's] condition.").  Here, although Plaintiff continued to seek treatment from Dr. Daprano, the record shows Plaintiff was examined by Dr. Daprano only twice prior to his filling out the opinion form. (Tr. 474, 486, 469-70).  Plaintiff does not point to any special circumstances surrounding his treatment relationship with Dr. Daprano that would establish him as a treating source for purposes of analyzing the opinion he rendered after only two visits.  *See Beauchamp*, 2014 WL 1154117 at *10-11 (*citing Kornecky*, 167 F. App'x at 506-07).  Accordingly, as Dr. Daprano was merely a non-treating, examining physician at the time he rendered the opinion, the ALJ was not

required to provide any deference or analysis under the treating source rule, and nonetheless gave a sufficient explanation for assigning the opinion limited weight.

However, assuming *arguendo* that Dr. Daprano did qualify as a treating source when he rendered his opinion, the ALJ sufficiently complied with the treating source rule.  Prior to his analysis of medical opinions, the ALJ summarized the objective medical evidence and treatment history, as well as claimant's reported activities, in the RFC analysis. (Tr. 22-23).  The ALJ's overview of the medical evidence here included reference to Plaintiff's shoulder and cervical spine imaging and findings, and records of physical examinations that revealed mild shoulder tenderness, normal upper extremity strength and sensation, full range of motion in all four extremities, and no muscle atrophy.   (Tr. 22, 372, 383, 432, 443, 474, 479, 503, 505). Subsequently, the ALJ found that, although his opinion regarding Plaintiff's abilities to sit, stand, and walk was consistent with the record, other limitations in Dr. Daprano's opinion were not consistent.  (Tr. 22-23).  Plaintiff attempts to undermine the inconsistency determination by pointing to evidence of pain and crepitance with range of motion, as well as imaging evidence showing arthritis and other abnormal findings, in Plaintiff's shoulders.  However, Plaintiff fails to point to any evidence that was not considered by the ALJ, as documented by his summary of the medical evidence in his RFC analysis.  *See*, *e.g.*, *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004) ("The ALJ's failure to discuss [specific evidence] does not indicate that [it] was not considered.  An ALJ need not discuss every piece of evidence in the record for his decision to stand.").  The ALJ's determination that this evidence did not support Dr. Daprano's opinion was within his discretion.  *Simpson*, 344 Fed. App'x at 194 ("'The ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and

draw his own inferences.'") (*quoting McCain v. Dir., OWCP*, 58 F. App'x 184, 193 (6th Cir. 2003)).

Plaintiff's argument that the ALJ did not adequately consider all the requisite factors under the treating source rule has no merit.  A factor-by-factor analysis is not required where the ALJ's decision clearly conveyed why the opinion was credited or rejected.  *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).  The ALJ recognized Dr. Daprano's area of practice as well as the treatment relationship between them, as the ALJ noted Dr. Daprano was Plaintiff's primary care physician, and referred to Dr. Daprano's treatment notes from multiple examinations.  (Tr. 22-23).  In determining Dr. Daprano's opinion was entitled to only limited weight, the ALJ pointed to inconsistencies between Dr. Daprano's opinion and his own treatment notes, as well as inconsistencies with other evidence of record.  (*Id.*).  Specifically, as discussed above, the ALJ properly found Dr. Daprano's opinion that Plaintiff was limited to occasionally lifting no more than ten pounds was overly restrictive and not consistent with the medical evidence of record.  (Tr. 23).  Further, the ALJ reasoned that such a restrictive limitation was inconsistent with Plaintiff's own testimony that he can lift up to 20 pounds occasionally; the Court is not persuaded by Plaintiff's baseless allegation that the ALJ's assessment mischaracterized Plaintiff's testimony, specifically that his reasoning did not align with the specific wording that Plaintiff "wouldn't try to pick up more than maybe 15, 20 pounds because [he] might drop it" and that he had taken out the garbage, weighing around fifteen pounds, the previous week.  (Tr. 52).

In addition to inconsistencies with the record as a whole, the ALJ further discredited the opinion because Dr. Daprano failed to point to any specific clinical findings in support of his opinion.  *See generally Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (An ALJ "is not

14

bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation."); *see also* 20 C.F.R. 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion.").  Additionally, the ALJ noted Dr. Daprano's own statement that his ability to formulate an opinion as to certain work limitations was limited and required input from physical medication and rehabilitation specialists.  (Tr. 23, 470).  The ALJ further reasoned that Dr. Daprano's opinion was only consistent with the objective evidence available and claimant's reported activities, which included yard work, cooking, and riding his bike, to the extent that it was determined credible in his analysis, considering the merits and deficits of the opinion as a whole.  (Tr. 23).  Finding that Plaintiff has failed to point to any evidence or authority in support or his argument to the contrary, the undersigned finds the ALJ provided sufficiently good reasons in support of his analysis of Dr. Daprano's opinion.  *See Poe v. Comm'r of Soc. Sec., 342 Fed. App'x 149*, 157 (6th Cir. 2009) ("An ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity.") (*citing Ford v. Comm'r of Soc. Sec., 114 F. App'x 194*, 197 (6th Cir. 2004)).

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: February 5, 2016

15